IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | CV 25–136–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| BEN JOHNSON, *et al.*, | |
| Defendants, | |
| AMERICAN FOREST RESOURCE COUNCIL, an Oregon non-profit, | |
| Defendant-Intervenor. | |

This matter comes before the Court on Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 15) and Motion for Discovery (Doc. 17). For the reasons herein, the Motions will be granted.

## BACKGROUND

This action challenges the U.S. Forest Service's ("Forest Service") issuance of the Redd Bull Decision Notice of the Redd Bull 2 Project ("Redd Bull 2" or "the Project") and the related Biological Opinion and Incidental Take Statement issued by the United States Fish and Wildlife Service ("USFWS"). (*See* Doc. 12.) Redd

1

Bull 2 authorizes a variety of treatment activities, including regeneration harvest, intermediate timber harvest, and non-commercial restoration harvest on a total of 6,421 acres west of St. Regis, Montana, in the Lolo National Forest. (Docs. 12 ¶¶ 2, 78; 14-1 ¶ 31.) One timber sale has already been auctioned under Redd Bull 2, and six additional timber sales are expected by the end of fiscal year 2030. (Doc. 14-1 ¶ 36.)

On July 11, 2025, Plaintiff sent Defendant agencies a 60-day notice of intent to sue under the Endangered Species Act ("ESA"). Plaintiff thereafter filed its original Complaint on August 22, 2025, and, on November 14, 2025, Plaintiff filed an Amended Complaint asserting that (1) the Project Biological Assessment, Biological Opinions, and Incidental Take Statements violate the ESA and the Administrative Procedure Act ("APA") (Count I); (2) the Project results in a take in excess of the Incidental Take Statement, in violation of ESA Section 9 (Count II); (3) the Project violates the National Environmental Policy Act ("NEPA") and the APA because the Forest Service failed to take a "hard look" at the Project's impacts to the environment and the Environmental Assessment fails to disclose sufficient information to the public (Count III); (4) the Project violates the National Forest Management Act ("NFMA") and the APA (Count IV); and (5) the Forest Service's refusal to analyze the Project in a full Environmental Impact Statement violates NEPA and the APA (Count V). (*See* Doc. 12.)

Plaintiff now seeks leave to file a Second Amended Complaint ("SAC") and to initiate discovery on their alleged ESA Sections 7 and 9 claims. (Docs. 15, 17.)

DISCUSSION

## I.    Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint once "as a matter of course" before a responsive pleading is served or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading. After that period, however, a "party may amend [a] pleading only by leave of court or by written consent of the adverse party[.]" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987) (quoting Fed. R. Civ. P. 15(a)). Leave to amend lies "within the sound discretion of the trial court." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Courts consider four factors when assessing a motion to file an amended complaint: (1) bad faith on the part of the party seeking amendment; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Lockheed Martin Corp. v. Network Solutions*, 194 F.3d 980, 986 (9th Cir. 1999). "In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs*, 833 F.2d at 186 (quoting *Webb*, 655

3

F.2d at 979). "The party opposing amendment bears the burden of showing prejudice." *Id.* at 187.

Plaintiff seeks to file the SAC pursuant to Rule 15(a)(2) and District of Montana Local Rule 15.1. The primary alteration in the SAC is the addition of a new count alleging violations of Section 7 of the ESA (Count II of the SAC). (*See* Doc. 15-1 at 41, ¶¶ 159–176) (alleging that, "[i]n sum, the Forest Service's continued authorization of logging and road building in bull trout watersheds is in violation of [Section] 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and its continued reliance on biological opinions with flawed 'no jeopardy' determinations [] is arbitrary, capricious, [and] an abuse of discretion[]"). The SAC further alters the heading language of and adds two additional allegations to Plaintiff's ESA Section 9 claim (Count III of the SAC). (*See id.* at 45 ¶¶ 178–185.)

The Court agrees that amendment is appropriate. First, Plaintiff seeks to amend the pleadings to add a single cause of action under ESA Section 7 and to clarify the relief requested pursuant to ESA Section 9; therefore, because Plaintiff has legitimate grounds to amend its pleadings, and there is no evidence indicative of a wrongful or otherwise improper motive, the amendment is not sought in bad faith. *See DCD Programs*, 833 F.2d at 187. Second, the proposed SAC would not cause undue delay. This litigation is in its infancy and has yet to progress beyond the initiating pleadings. Indeed, Defendants filed their responsive pleading just one

4

month prior to Plaintiff's motion seeking leave to amend and this Court has yet to issue a scheduling order.

Third, while the spirit of "liberality" inherent to Rule 15 "is not dependent on whether the amendment will add causes of action or parties[,]" it is "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice[.]" *Id.* at 186. Here, Defendants argue that Plaintiff should not be provided "three bites at the apple" in an "attempt to cure pre-existing deficiencies." (Doc. 25 at 19 (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 315 F.3d 1048, 1053 (9th Cir. 2003)).) Without more, the Court cannot conclude that a third "bite at the apple" will cause Defendants to suffer undue prejudice, particularly at this stage of the litigation. Rather, permitting amendment would properly facilitate adjudication of this case on its merits. *See DCD Programs*, 833 F.2d at 186

The fourth factor requires consideration of whether the proposed amendment would be futile or legally insufficient. *See Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988). "A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id.* (citation omitted). Relying primarily on *Bennet v. Spear*, 520 U.S. 154 (1997), Defendants argue these amendments would be futile because Counts II and III of the SAC fail to state legally cognizable claims upon which relief can be granted pursuant to ESA Sections 7 and 9. (Doc. 25 at 6.) In

5

reply, Plaintiff argues that Defendants misunderstand and misconstrue their proposed claims for relief, and that they allege—as is required by Federal Rule of Civil Procedure 12(b)(6)—a "short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. 29 at 6–7 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).).

In *Bennett*, the Supreme Court held that FWS could not be sued under the ESA's citizen-suit provision for maladministration of the ESA pursuant to 16 U.S.C. § 1540(g)(1)(A). *Envtl. Prot. Info Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001) (citing *Bennett*, 520 U.S. at 173). However, the Supreme Court also expressly recognized that the citizen-suit provision "is a permissible means to enforce the substantive provisions of the ESA against regulated parties—including government agencies like the FWS in its role as the acting agency." *Id.* The Supreme Court further observed that where the ESA does not provide an avenue in court, judicial review under the APA may be maintained for causes of action against FWS "for which there is no other adequate remedy in court." *Bennett*, 520 U.S. at 175.

Though Count II of the SAC frames the allegations broadly against both FWS and the Forest Service, several specific allegations clarify Plaintiff's central argument: that the "*Forest Service's* continued authorization of logging and road building" allegedly violates Section 7 of the ESA. (Doc. 15-1 ¶ 175.) And though

6

Plaintiff chose to frame its ESA Section 7 allegations against Defendant agencies as a collective—which may, the Court acknowledges, result in confusion on some issues—Plaintiff's drafting does not foreclose the opportunity to seek judgment on the merits. As Plaintiff concedes, "[t]o the extent that *Bennett* forecloses Plaintiff's ability to bring a [Section] 7 claim against FWS under the ESA's citizen-suit provision, it does not preclude Plaintiff from challenging the lawfulness of FWS's unsupported no jeopardy determinations issued under Section 7 via the APA." (Doc. 29 at 7–8); *see Envtl. Prot. Info Ctr.*, 255 F.3d at 1079 (even if *Bennett* were to preclude citizen-suit standing under the ESA, plaintiff would still have standing to sue under the APA).

Defendants further contend that similar to Count II, Count III of the SAC improperly challenges FWS'— and not the Forest Service's—"authorization of projects" including Redd Bull 2. (Doc. 25 at 12–13 (citing Doc. 15-1 ¶¶ 177–185).) Defendants' argument here is reasonable. The body of Count III indeed only makes specific reference to FWS and to "the agency" without any immediate clarification as to which "agency" it refers. (*See* Doc. 15-1 at 46, ¶¶ 177–185.) However, the SAC later clarifies that Plaintiff seeks judgment against the *Forest Service*—and not FWS—for the alleged violations of Section 9 of the ESA. (*See* Doc. 15-1 at 58, ¶ D) (asking this Court to "[d]eclare that the Forest Service has violated ESA [Section] 9 by causing unpermitted takes of bull trout."). It therefore appears that

"the agency" referred to in Count III is the Forest Service and not, as Defendants understand, FWS. In any event, aside from relatively minor alterations to the Count heading and the addition of two final allegations, Count III of the SAC merely restates Count II of the Amended Complaint. (*See* Docs. 12 at 42, ¶¶ 170–77; Doc. 15-1 at 46, ¶¶ 177–185.)

The Court therefore concludes that the amendments contained in the SAC are not in bad faith, are timely brought, will not unduly prejudice the Defendants, and are not futile. To the extent issues remain with respect to the merits of Counts II and III as alleged against FWS, the Court finds these best suited for examination at the summary judgment stage.

### A. Whether Count II is Barred by the ESA's 60-day Notice Provision

"The purpose of the 60-day notice provision is to put the agencies on notice of a perceived violation of the statute and an intent to sue. When given notice, the agencies have an opportunity to review their actions and take corrective measures, if warranted. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). A citizen is not "required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002). Rather, notice "need only provide enough information that the defendant can identify and correct the problem."

8

*Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir.

2015). "This sixty-day notice requirement is jurisdictional," and a "failure to

strictly comply with the notice requirement acts as an absolute bar to bringing suit

under the ESA." *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520 (citation

omitted).

Defendants argue that Count II of the SAC is barred because Plaintiff failed

to satisfy the ESA's 60-day mandatory notice provision and cannot now amend its

allegations to cure this jurisdictional defect. (Doc. 25 at 14.) Specifically,

Defendants argue that because Count II "is derivative of the ESA Section 7 claim

Plaintiff prematurely brought in its Complaint"—which was filed 18 days prior to

the expiration of the 60-day notice period—"Plaintiff cannot now repackage its

ESA Section 7 claim under a new heading and format to evade" the notice

prerequisite. (*Id.* at 14–15.) Plaintiff disagrees and argues that (1) it did not "bring"

this claim in the original Complaint and (2) the allegations contained in its

Amended Complaint and SAC are identical to the those contained in its 60-day

Notice of Intent to Sue. (Doc. 29 at 11–12 (citing Doc. 25-1).)

The Court agrees. The original Complaint alleged claims only under NEPA,

NFMA, and the APA. (*See* Doc. 1 ¶ 26.) The fact that Plaintiff included language

with respect to Section 7 in its original Complaint does not somehow transform

Plaintiff's original claim under the APA into one seeking relief under the ESA, nor

9

does it render the three complaints "virtually indistinguishable." (*See* Doc. 1 ¶¶ 145, 146.) Indeed, Defendants provide no authority, nor is the Court aware of any, supporting such a conclusion. The Court therefore finds that the Amended Complaint and SAC—both of which were filed after the expiration of the 60-day notice period—are timely.

Finally, Defendants argue they did not receive proper notice of Plaintiff's intent to challenge "17 discreet projects" under the ESA. (Doc. 25 at 18 (citing Doc. 15-1 ¶ 185).) Defendants specifically contend that while Plaintiff's notice letter mentions "17 discreet projects," Plaintiff failed to identify them or to otherwise provide notice of their intention to challenge projects beyond Redd Bull 2. (*Id.* (citing Doc. 25-1 at 6).) The present lawsuit, however, does not challenge or seek to enjoin the imposition of "17 discreet projects." Though Plaintiff may reference these 17 projects to ostensibly highlight the Government's authorization of similar projects and how that may or may not relate to the current situation (*see* Doc. 29 at 14), the relief requested is confined solely to Redd Bull 2. (*See* Doc. 15-1 at 57–58.)

## II.    Motion to Commence Discovery

Plaintiffs next seek an order permitting discovery on its claims arising under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(A). The citizen-suit provision allows individuals to bring claims "to enjoin any person, including the

United States and any other governmental instrumentality or agency . . . who is

alleged to be in violation of any provision of this chapter or regulation issued under

authority thereof." *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472,

496 (9th Cir. 2011) (quoting 16 U.S.C. § 1540(g)(1)). The citizen-suit provision "is

a means by which private parties may enforce the substantive provisions of the

ESA against" government agencies. *Bennet*, 520 U.S. at 173.

The first question, therefore, is whether Plaintiff's claims fall within the

citizen-suit provision of the ESA. Here, Count II of the SAC challenges the Forest

Service's continued authorization of logging and road building in bull trout

watersheds as a violation of Section 7(a)(2) of the ESA, alleging these actions

represent an unlawful departure from the agency's mandate to protect and recover

imperiled species and habitats.[1] (Doc. 15-1 at 41.) Count III of the SAC alleges

that the repeated authorization of projects, including Redd Bull II, has resulted in

an unauthorized take in violation of ESA Section 9.[2] (*Id.* at 46.) Accordingly,

---

[1] As discussed above, Defendants argue that FWS's inclusion in Count II is
improper. It appears, however, that Plaintiff concedes the relief requested by Count
II is specific to the Forest Service, and the allegations against FWS are included
only to "provide context" for those allegations. (*See* Doc. 29 at 3–4.) That
notwithstanding, should Defendants raise the issue of FWS's inclusion in Count II
at summary judgment, the Court will address it further at that time.

[2] Also as discussed above, it seems that although Plaintiff inadvertently omitted
specific mention of the "Forest Service" from the body of Count III, the SAC later
clarifies that Plaintiff seeks relief against the Forest Service, and not FWS, for
violations of ESA Section 9. (*See* Doc. 15-1 at 58 ¶ D.) Moreover, given that the
Forest Service is the action agency in this instance, a plain reading of Count III

11

because Counts II and III challenge the Forest Service's compliance with the substantive provisions of the ESA, they properly arise under the ESA's citizen-suit provision. *See Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005).

Having determined that Counts II and III fall within the citizen-suit provision of the ESA, the next question is whether judicial review is confined to the administrative record. ESA claims are analyzed under the APA because the ESA contains no internal standard of review. *Village of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984). This standard of review requires that a reviewing court uphold an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA also sets forth the scope of review, which defines the type of evidence that courts may consider when reviewing claims against an agency. *See Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991). It is well established that the scope of judicial review governing APA claims is limited to the administrative record. *See Bennett*, 520 U.S. at 178–79.

Relying on *Kraayenbrink*, 632 F.3d at 497, Plaintiff argues that unlike in APA cases, the scope of review in claims brought pursuant to the ESA citizen-suit provision are not confined to the administrative record. (Doc. 18 at 10.) Indeed, in

---

provides additional support for this conclusion. (*See id.* ¶ 185) ("the agency's repeated authorization of projects, including this Project, [] has resulted [] in unauthorized take in violation of ESA § 9.").

*Kraayenbrink*, the Ninth Circuit held that because claims under the ESA citizen-suit provision are distinct from claims under the APA, courts "may consider evidence outside the administrative record for the limited purpose of reviewing . . . ESA claim[s]." 632 F.3d at 497 (citation omitted).

Relying on *Northwest Ecosystem Alliance v. U.S. Fish & Wildlife Service*, 475 F.3d 1136, 1140 (9th Cir. 2007) and *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014), Defendants respond that "in order to comply with the APA standard of review, a reviewing court invariably must confine itself to the APA scope of review, absent extraordinary circumstances." (Doc. 26 at 13.) *Northwest Ecosystem Alliance*, however, predates *Kraayenbrink*, and *Jewell* involved a discreet challenge to the consulting agency's—in that case, the FWS—biological opinion, which is unlike the situation at issue here.

Defendants further rely on *Alliance for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1197 (D. Mont. 2019), wherein this Court interpreted *Kraayenbrink* restrictively to find that ESA cases are "subject to the same records limitations as other APA cases." In reaching this conclusion, the Court reasoned that while many district courts interpret *Kraayenbrink* to mandate an open record in ESA cases, the District of Montana consistently took a more restrictive view of discovery. *Probert*, 412 F. Supp. 3d at 1197 (citing *All. for Wild Rockies v. Kruger*,

950 F. Supp. 2d 1172, 1177 (D. Mont. 2013); *Native Ecosystems Council v. Marten*, 334 F. Supp. 3d 1124, 1129 (D. Mont. 2018); *Wildwest Inst. v. Ashe*, 2013 WL 12134034, at *2 (D. Mont. Oct. 18, 2013)).

Yet in the time since *Probert* was decided, it appears that the weight of authority—including a recent decision from this District—leans heavily in favor of permitting some amount of extra-record evidence in ESA citizen-suit claims. *See Northern Plains Resource Council v. United States Army Corps of Engineers*, 454 F. Supp. 3d 985, 991 (D. Mont. 2020) ("The ESA's citizen-suit provision allows the Court to consider evidence outside the administrative record in its review of Plaintiffs' ESA claim."); *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1219–1222 (D. Idaho 2021) (*Kraayenbrink* permits consideration of post-decision extra-record evidence to support a plaintiff's ESA citizen-suit claim); *Nw. Env'tl Advocates v. U.S. NMFS*, 2025 WL 472332, at *6–7 (D. Or. Feb. 11, 2025) (same); *White v. U.S. Army Corps of Engineers*, 2024 WL 24322, at *4–5 (N.D. Cal. Jan. 2, 2024) (same); *Friends of the River v. NMFS*, 2025 WL 1078889, at *1 (E.D. Cal. Apr. 10, 2025) (same). Moreover, the Ninth Circuit has again observed, albeit in a footnote, that courts may consider reports outside the administrative record "for the limited purpose[] of reviewing [] ESA claim[s]." *Nat'l Family Farm Coalition*, 966 F.3d 893, 926 n.11 (9th Cir. 2020) (citing *Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011)).

14

In consideration of this recent trend in both this District and in other district courts, the undersigned takes this opportunity to alter its conclusion in *Probert* insofar as *Probert* took a more restrictive reading of *Kraayenbrink* and excluded discovery on ESA citizen-suit claims. Therefore, the Court concludes that pursuant to *Kraayenbrink* and its progeny, review of Counts II and III of the SAC shall not be confined to the administrative record.

Discovery on these matters is not only permitted pursuant to *Kraayenbrink*, but is also warranted because Plaintiff's ESA allegations appear to extend to projects beyond the Redd Bull 2. (*See* 15-1 ¶ 162.) Specifically, the Redd Bull 2 Biological Opinion mentions, in passing, "17 discreet projects" as well as other "biological opinions and associated incidental take statements from programmatic actions from agencies including the Forest Service and Bureau of Land Management . . . and the Army Corps of Engineers." (Doc. 30-1 at 5.) The Biological Opinion concludes that "[w]hile none have singularly risen to the level of jeopardizing the species, they have all resulted in some varying levels of adverse effects to bull trout, ranging from sub-lethal to legal effects." *Id.* Plaintiff argues that it wishes to seek discovery related to these 17 discreet projects, their biological opinions, and their incidental take statements, in addition to any other relevant evidence and documents cited to by the agencies. (Doc. 30 at 11.) It therefore appears that while Plaintiff does not specifically challenge implementation of these

additional projects, the scope of judicial review may necessarily extend beyond

Redd Bull 2's administrative record. As a result, the facts and posture of this case

weigh in favor of permitting discovery. *See Center for Biological Diversity v. Ross*,

349 F. Supp. 3d 38, 43–44 (D.D.C. 2018).

CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Plaintiff's Motion for Leave to File Second Amended

Complaint (Doc. 15) is GRANTED. Plaintiff shall file its Second Amended

Complaint by February 16, 2026.

IT IS FURTHER ORDERED that Plaintiff's Motion for Discovery (Doc.

17) is GRANTED and Plaintiff is permitted to seek discovery on Counts II and III

of the Second Amended Complaint.

IT IS FURTHER ORDERED that the parties shall promptly refile their

Proposed Joint Case Management Plan with updated deadlines, including a

proposed discovery deadline.

DATED this 11th day of February, 2026.

Dana L. Christensen, District Judge
United States District Court